UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| DAVID SOLOMON KING, | ) | | |
|---|---|---|---|
| | ) | | |
| Movant, | ) | | |
| | ) | | |
| v. | ) | Case No. | CV408-155 |
| | ) | | CR405-185 |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

**REPORT AND RECOMMENDATION**

David Solomon King moves over the government's opposition for 28 U.S.C. § 2255 relief. (Docs. 1 & 4.[1]) For the following reasons, his motion should be **DENIED**.

I. **BACKGROUND**

King was sentenced to 210 months' imprisonment upon a jury conviction for possession of a firearm by a convicted felon and possession with intent to distribute crack cocaine. (Cr. docs. 66 & 73.) After

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV408-155. "Cr. doc." refers to documents filed under movant's criminal case, CR405-185.

unsuccessfully appealing his conviction and sentence, *United States v. King*, 233 F. App'x 969 (11th Cir. 2008) (per curiam), he filed the present § 2255 motion, asserting that his trial attorneys were ineffective for failing to:

    (1)   present evidence of his crack addiction to the jury, which would have proved that he intended to use the crack underlying his conviction for personal use;

    (2)   request a jury instruction on the drug charge's lesser-included offense; and

    (3)   call his drug treatment counselor as a witness.

(Doc. 1 at 15-23.)

## II.  ANALYSIS

### A.  Governing Standards

Each of King's claims for collateral relief assert ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."

*Id.* Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "no competent counsel would have taken the action that his counsel did take." *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477

U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

### B. Drug Addiction Defense

King first contends that his trial attorneys were ineffective for failing to pursue his chosen defense: that he was a user rather than distributer of crack cocaine. (Doc. 1 at 15-18.) In his closely related third claim, he argues that his counsel erred by failing to call a witness to the stand who could have testified as to his drug addiction. (*Id.* at 21.) Finally, he contends that counsel should have moved for a jury instruction on simple possession. (*Id.* at 19.) In order to place these claims in context, the Court must step through the facts underlying King's conviction.

King was residing at a long-stay hotel on the night of his arrest. (Cr. doc. 79 at 13, 17.) Working from a tip, police officers surveilled King and sought a search warrant for his room. (*Id.* at 16.) During the

4

surveillance, a police officer "witnessed a hand-to-hand exchange between King and the driver of . . . a white Honda, which he believed to be a drug transaction, although he could not be certain of that." *King*, 233 F. App'x at 974. Relying on improper information furnished by the hotel's front desk, which was compounded by the fact that King rented the room under a false name (James Smith), the officers mistakenly obtained and executed a search warrant for the room next door. (Cr. doc. 79 at 16.)

Realizing they had made a mistake, the police went to King's room and talked to him through a window. (*Id.* at 18.) They sought entry, but King stated they could not come in without a warrant. (*Id.*) An officer thus left to get a warrant. Now alerted to the police activity, King thoroughly scrubbed his room with gallons of bleach and hid a 9mm Glock handgun — complete with laser-sight — inside his bed's box-springs. (*Id.* at 19, 21.) After prepping the room, he consented to a search before the police obtained a warrant. (*Id.* at 19.)

Unsurprisingly, no drugs were discovered during the search. *King*, 233 F. App'x at 974. Approximately $300 was found on King's person. A canine alerted at several places in the room, leading to the discovery of

several empty small self-locking plastic bags, of a type commonly used for dealing crack cocaine, tucked behind a night-stand. (Cr. doc. 79 at 60.) King could not prep his car, however. There, the police discovered a small amount of crack in the center console.[2] (*Id.* at 25.)

All of King's grounds for relief are centered around his insistence that he is a crack addict who only possessed crack for personal use.[3] (Doc. 1 at 15-18.) Rather than relying upon addiction as a defense,

---

[2] The government asserts that King is simply reasserting a sufficiency of the evidence argument, which was already raised and rejected before the Eleventh Circuit. (Doc. 3 at 11-13.) The Eleventh Circuit held that "[w]ith respect to the final element of the offense, intent to distribute, . . . the Government presented circumstantial evidence which, if believed by a juror, would support such a finding." *King*, 233 F. App'x at 974-75. Most repackaged claims are dismissed out-of-hand, since a claim rejected by the appellate court does not merit rehearing on a different but previously available legal theory. *United States v. Nyhuis*, 211 F.3d 1340 (11th Cir. 2000). The ineffective assistance of counsel claim, however, was not available on direct appeal and relies upon different proof, so the Court will analyze King's claim on the merits.

[3] The Court of Appeals noted that

> the Government elicited testimony that: . . . the agents did not recover any smoking devices, crack pipes, spoons, needles, or any other paraphernalia during the search of King's hotel room or vehicle to suggest the cocaine was being used for personal consumption; and . . . even though the officers did not recover any scales from the hotel room, an individual did not need scales to sell cocaine.

*King*, 233 F. App'x at 974. Although the Eleventh Circuit made much of the fact that no indicia of use was present, King states that he had no need for any drug-smoking paraphernalia because he smoked it through his cigarettes. (Doc. 1 at 15.) Defense counsel surely realized that his admission of such use did not necessarily absolve him, for drug-users are sometimes drug-dealers.

however, his attorneys attacked the government's distribution evidence head on. For example, during cross-examination of two arresting police officers, Bates Lovett, one of King's attorneys, pointed out that no one had witnessed an actual confirmed drug transaction and that there were no scales, pagers, or anything used to cook or cut crack discovered during the search of King's room and car. (Cr. doc. 79 at 32, 40-43.) After the government presented its case, Lovett moved for a judgment of acquittal, stating that "there was no testimony of drugs that changed hands, money that changed hands, or anything along those lines." (*Id.* at 89-90.) The district judge denied the motion. (*Id.* at 90.) During the presentation of King's case, Sarah Lamar, King's second attorney, elicited testimony from Ms. Bass, the driver of the white Honda that the officers had suspected had engaged in a drug transaction with King. Bass testified that the transaction involved a pack of Newport cigarettes, nothing more. (*Id.* at 93-94.) Finally, Lamar tried to show that King was a productive member of society by calling his manager to the stand. (*Id.* at 100-102.)

"Generally, trial tactics are for defense counsel to formulate." *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991); *United States*

*v. Teague*, 953 F.2d 1525, 1536 (11th Cir. 1992). "In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice." *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998); *Garvin v. United States*, 2006 WL 3254493, *7 (S.D. Ga. 2006) (unpublished). Since courts give great deference to choices made by defense counsel at trial that are arguably dictated by a reasonable trial strategy, strategic choices made after a thorough investigation of the law and facts are virtually unchallengeable. *Strickland*, 466 U.S. at 690-91; *Jennings v. McDonough*, 490 F.3d 1230, 1244 (11th Cir. 2007); *Stephenson v. Kemp*, 2007 WL 2874319, *9 (S.D. Ga. 2007) (unpublished); *Blankenship v. Terry*, 2007 WL 4404972, *7 (S.D. Ga. 2007) (unpublished). Moreover, "the decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel," *Blanco*, 943 F.2d at 1495, and is "the epitome of a strategic decision." *Temple v. Morton*, 2007 WL 2141823, at *2 (11th Cir. July 27, 2007) (quoting *Waters v. Thomas*, 36 F.3d 1506, 1512 (11th Cir. 1995)).

Here, King's attorneys made the strategic decision not to pursue a drug addiction defense, and they had some success. The jury found King guilty of distributing crack and illegal possession a firearm by a convicted felon, but it found him not guilty of using the firearm in furtherance of a drug trafficking crime, a charge that can support a life sentence. (Cr. doc. 66.) Moreover, counsels' decision was reasonable. If they successfully undermined the drug distribution count, both that charge and the firearm-in-furtherance charge would have dropped out of the case, giving King a chance to avoid any drug-related conviction.[4] On the other hand, had counsel openly aired King's crack addiction defense, called his drug treatment counselor as a witness, and moved for a jury instruction on simple possession, which would have been a misdemeanor based upon King's criminal record, it is still far from likely that the case

---

[4] The government argues that the district judge need not have issued a lesser-included instruction in any event. (Doc. 3 at 17.) It relies upon *United States v. Catchings*, 922 F.2d 777 (11th Cir. 1991), but that case involved a defendant cutting and cooking a large quantity of crack, clearly intending it for distribution. Since the facts supporting the distribution charge were the same as those showing possession, and the evidence would not permit a rational jury to find Catchings guilty of the lesser-included offense and not the greater, the Court of Appeals held that it was not an abuse of discretion for the district judge to refuse to give a jury instruction on the lesser-included offense of possession of a controlled substance. *Id.* at 780-81. Here, where the factual issues pertaining to possession and distribution were more divergent, *Catchings* may not have excused the district judge from giving a lesser-included instruction if requested.

would have turned out differently. (Doc. 1 at 19.) Given King's exceedingly inculpatory conduct in bleaching the room and hiding the firearm, and considering the small crack-type baggies and the crack found by the police in his car, there was certainly no guarantee that the jury would have chosen to convict for simple possession rather than for distribution. Additionally, the drug addiction defense may have backfired since it offers a motive for distribution — to support King's habit.

Moreover, King has not established that if counsel erred, the error was prejudicial. That is, while there is a *chance* that the jury might have reached a different result, that is simply not enough to warrant habeas relief. Faced with such strong circumstantial evidence of distribution, King has not established that there was a *reasonable probability* that the results would have been different had his counsel pursued a drug addiction defense, moved for a jury instruction on simple possession, and called his drug treatment counselor as a witness. *Kimmelman*, 477 U.S. at 375.

## III. CONCLUSION

For all of the reasons explained above, David King's § 2255 motion (doc. 1) should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this  17th  day of August, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA**